**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs | : | CR. No. 00-122S |
| | : | |
| TIMI WALLACE | : | |

**GOVERNMENT'S MOTION FOR UPWARD DEPARTURE**

The United States of America, by and through its undersigned attorneys, respectfully moves this Court to upwardly depart under United States Sentencing Guidelines sections 5K2.6, 5K2.7 and 4A1.3. In support of this Motion, the United States submits the attached Memorandum of Law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Lee H. Vilker
LEE H. VILKER
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of February, 2007, I caused a copy of the within Motion for Upward Departure was sent via electronic filing, to the following:

Edward C. Roy, Jr., Esq.
Assistant Federal Public Defender
Assistant Federal Public Defender
10 Weybosset Street
Suite 300
Providence, R.I. 02903

/s/ Lee Vilker
Lee Vilker
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR. No. 00-122S |
| | : | |
| TIMI WALLACE | : | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S MOTION FOR AN UPWARD DEPARTURE**

## I. Offense Facts

On September 25, 2000, between 10:10 and 10:15 a.m., co-conspirator Nickoyan Wallace entered D&B Guns, 1284 North Main Street, Providence, posing as a customer. D&B Guns was a licensed federal firearms dealer on September 25, 2000. He was first approached by Donn DiBiasio, the owner, and he told Mr. DiBiasio that he wanted a magazine/ammunition clip. Mr. DiBiasio asked what type of magazine and, at about that time, Donna Gallinelli, a clerk, came over to help Nickoyan Wallace. Nickoyan Wallace stood next to a gun case containing high caliber hand guns and pointed to a Springfield .45 caliber semi-automatic as he told her he needed three magazines. Ms. Gallinelli went to a desk in which the keys to the cases were held. As she did so, defendant Timi Wallace ("Wallace") burst into the store holding a TEC 9 semi-automatic with a high capacity magazine and ran toward Mr. DiBiasio, who was sitting at his desk. Defendant yelled at

Mr. DiBiasio "don't move" repeatedly.

Ms. Gallinelli attempted to run toward the front door to escape. However, as she did so, Nickoyan Wallace ran along side of her and then jumped over the counter, fell onto his back, and brandished a gun at her. He screamed at her to stop. Nickoyan Wallace got up and told Ms. Gallinelli to open the display cases. He kept the gun on her, inches from her at times, as she began to comply with his orders. When Ms. Gallinelli began to open the cases which held the smaller caliber hand guns, Nickoyan Wallace told her to open the high caliber case. After she had done so, he removed six handguns and put them into a bag. Nickoyan Wallce then jumped back over the counter and ran out the door; and as he did so, defendant Timi Wallace backed out of the store. During the entire robbery, defendant Timi Wallace had a Tech-9 assault firearm pointed directly at the head and body of Donn DiBiasio as he ordered Mr. DiBiasio, again and again, not to move. Both men fled the store, apparently turning right onto North Main Street.

Six guns were stolen by the defendant and his brother from D&B Guns: a Ruger .45 caliber model P97 pistol, serial number 663-22891; a Magnum Research, Inc. model Desert Eagle .50 caliber pistol, serial number 30200080; a Colt model 1911A1 .45 caliber pistol, serial number 1102173; a Springfield Armory model 1911 .45 caliber pistol, serial number N360585; a Smith & Wesson model 4006 .40 caliber pistol, serial number THC1083; and a Para-

Ordinance model P13 .45 caliber pistol, serial number PK3014 from the gun case.

Both Ms. Gallinelli and Mr. DiBiasio testified that the TEC 9 pistol and the pistol used by the defendants appeared to them to be dangerous based on their years in the firearms business. Ms. Gallinelli stated she was in fear for her life. Mr. DiBiasio stated he feared for himself as well as for Ms. Gallinelli. Mr. DiBiasio identified the defendant in court as the man who brandished a gun at him.

Investigation led to surveillance of 181 Pleasant Street, Providence, Rhode Island. During the early morning hours of October 5, 2000, Nickoyan Wallace was arrested at the 3rd floor apartment of 181 Pleasant Street on a state warrant for the robbery at D&B Guns as well as an outstanding Massachusetts warrant for murder. Timi Wallace was not present nor was anyone else. A search pursuant to a state warrant was conducted by officers and agents. During the search, a number of firearms were found between the wall and the shower stall insert. Among them were 5 of the 6 firearms stolen from D&B Guns. In addition, a loaded TEC 9 matching the description of the one brandished during the robbery as well as a loaded Mossberg shotgun and a loaded MAC 11 semi-automatic, were recovered. The TEC 9 had a high capacity magazine as well. Several types of ammunition and magazines, including high capacity magazines, were also

recovered. The amount of ammunition recovered was in the hundreds of rounds.

Although defendant Timi Wallace was not present at 181 Pleasant Street on October 5, 2000, evidence introduced at trial tied him to that apartment. First, a witness named Lelita McKetty testified that during June 2000, the defendant asked her to rent an apartment for him in Providence and that he accompanied her to that apartment to do so. Second, the apartment was rented in the name of Devon Lewis, an alias used by the defendant. And third, a large number of personal documents in the name of the defendant were found within the apartment.

**II. Travel of the Case**

Defendant Timi Wallace and his brother Nickoyan were both indicted on October 18, 2000, for violation of the Hobbs Act, 18 U.S.C. § 1951, theft of firearms from a federally licensed firearms dealer, 18 U.S.C. § 922(u), and the brandishing of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924©. Co-defendant Nickoyan Wallace was convicted of the aforementioned charges following a jury trial in 2001. Defendant Timi Wallace remained a fugitive until he was apprehended by the United States Marshals on July 22, 2004.

On October 12, 2004, the trial in the instant matter commenced. On October 15, 2004, the jury returned guilty verdicts on each of the four counts charged in the indictment.

In the subsequent sentencing hearing, this Court sentenced Wallace to 300 months imprisonment, after upwardly departing on a number of grounds and, in the alternative, sentencing defendant to a sentence outside of the guideline range, pursuant to the newly-decided Supreme Court decision of United States v. Booker, 543 U.S. 220 (2005).

In a lengthy decision on appeal, the Court of Appeals affirmed Wallace's conviction but remanded the case for resentencing. See United States v. Wallace, 461 F.3d 15 (1st Cir. 2006). In remanding the case for resentencing, the Court of Appeals "concluded that [the Court] has articulated both valid and invalid grounds for its departure." Id. at 43. The Court of Appeals specifically held the following departures to have been appropriate or potentially approppriate: Weapons and Dangerous Instrumentalities (USSG § 5K2.6), Disruption of Government Function (USSG § 5K2.7), and Under-Represented Criminal History Category (USSG § 4A1.3). Id. The Court of Appeals found the following grounds for an upward departure to be unsupported by the record that was before the Court on appeal: Extraordinary Obstruction of Justice (USSG § 3C1.1), Extreme Psychological Injury (USSG § 5K2.3), and Facilitation of Criminal Purpose (USSG § 5K2.9). Id.

## III. Argument

After a careful review of the opinions of this Court and of the Court of Appeals, the United States respectfully moves for an upward departure on the following three grounds: Weapons and Dangerous Instrumentalities (USSG § 5K2.6), Disruption of Government Function (USSG § 5K2.7), and Under-Represented Criminal History Category (USSG § 4A1.3). The United States also reserves its right to seek an upward departure for Extreme Psychological Injury (USSG § 5K2.3). The United States will address each of these grounds independently.

A. <u>Weapons and Dangerous Instrumentalities</u>

The evidence presented at trial made clear that Wallace used a particularly dangerous firearm during the armed robbery of D&B Guns: a Tec-9 submachine gun. The store owner, Donn DiBiasio, testified that he had been a firearms dealer since 1959. (10/12/04 Tr. at 30) Based on a career working with firearms, DiBiasio had no doubt what type of gun was pointed at his head:

> Q: Were you able to determine what type of firearm that was pointed at you?
>
> A: Yes, I was. The manufacturer was an Internec. It's called a Tec-9. It looks like a civilian model of a submachine gun.
>
> Q: Have you had in your career an opportunity to see other Tec-9's?
>
> A: Yes. We had sold those right along. I had none in stock at the time, but we had sold them. I was familiar with that type of firearm?

Q: Any doubt in your mind it was a Tec-9 that he was carrying?

A: It was a Tec-9. I had seen enough of them. It also had some distinctive features on them ...

(10/12/04 Tr. at 42). DiBiasio further testified as to the dangerous manner in which Wallace was pointing this gun at him:

A: He was holding it with his right hand on the grip of the gun, finger on the trigger. And then the magazine stuck out from the side. And so it was sideways like this, This hand holding the magazine, and this hand with the finger on the trigger on the gun itself. ...

Q: And did he have both hands on this Tec-9 during the entire time he was in the store?

A: Every once in a while when he first got over there, he was attempting to – he had – the person had a hooded sweatshirt on, and underneath the sweatshirt there was some sort of cap. And the sweatshirt was on when he came into the store all the way down right standing there. All of a sudden, he decided that I guess he was trying to pull the sweatshirt to cover part of his face. So he had to let go of the gun with this hand to do that. And about that time, the full magazine, the gun is pretty heavy, the gun was starting to droop down. . . .

Q: Based on you years of experience as a firearms dealer, was this series of events any particular concern when he would take one of his hands off the Tec-9?

A: Yes. I was afraid that he might lose control and the gun would go off, you know, with the amount of weight that was on there. And I was just afraid that, again, it was just like when am I going to get shot. Is it going to be sooner or later.

(10/12/04 Tr. at 43-44)

Corroborating DiBiasio's testimony, of course, was the fact that a loaded TEC-9 matching the description of the one

brandished during the robbery was found in the Pleasant Street apartment the defendant rented.

Wallace's use of this particularly dangerous weapon during the armed robbery warrants an upward departure under U.S.S.G. § 5K2.6, which provides:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

The Court of Appeals had an opportunity to address a departure under this section in United States v. Hardy, 99 F.3d 1242 (1st Cir. 1996). In Hardy, the defendant had been convicted of unlawful possession of a firearm after previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Id. at 1244. The facts of the case involved the defendant's unlawful possession of a loaded, sawed-off, twelve-gauge, double-barrel shotgun that was planted in the backyard of a residence that was occupied by a family with three young children. Id. Based on the particularly dangerous nature of the weapon and the location at which it was stored, the district court departed upward under USSG § 5K2.6. The Court of Appeals affirmed, holding that "to the extent a sentencing court supportably finds that a defendant's choice of weapons, and the actual manner of its use, increased the danger to 'unusual levels' and upward

departure under USSG § 5K2.6 would be permissible." Id. at 1249-1250.

The same logic applies to the instant case. Wallace pointed an extremely dangerous type of firearm into the face of DiBiasio. Defendant's choice of a Tec-9 and the manner in which he used that weapon certainly increased the danger to an unusual level.

The Court of Appeals in this case rejected defendant's argument that the application of this upward departure would amount to impermissible double-counting because the dangerousness of the weapon was already accounted for in determining the base offense level under the firearms guidelines. Wallace, 461 F.3d at 36. Noting that Wallace used the Tec-9 in a way that endangered the victims, the Court of Appeals concluded that the defendant's use of the weapons and dangerous instrumentalities was a valid ground for an upward departure. Id. A departure under for weapons and dangerous instrumentalities is warranted.

B. Disruption of Government Function

Under Guideline section 5K2.7, "[i]f the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected." Defendant's flight from prosecution in this case disrupted government function in a number of significant ways and warrants an upward departure.

Defendant's brother Nickoyan was arrested in October 2000 on an indictment charging the two brothers with the armed robbery of D&B Guns. As defendant could not be found, the government was forced to proceed with the trial of Nickoyan alone. The victims of this case were therefore required to testify as to the terrifying events both in Nickoyan's trial and in the trial of the defendant years later.

The United States Marshal's Service engaged in a 4-year long search for the defendant. There can be little doubt as to why it took so long to apprehend the defendant. The defendant did everything in his power to avoid apprehension. During his trial testimony, defendant testified that he learned about the indictment in this case after he went to Miami in the year 2000. (10/13/04 Tr. at 98) Wallace then testified as follows:

Q: You were in hiding, is that right?

A: I wouldn't say hiding. I was not.

Q: Would you say you were trying to avoid law enforcement at all cost?

A: I mean, basically I was trying to be on the safe side and survive.

* * *

Q: From 2000 to the present, did you ever rent an apartment in your own name?

A: No.

Q: Did you ever get a hotel room in your own name? By your own name, I mean your real name, Timi Wallace?

A: No.

Q: Did you ever get a credit card in your own name?

A: No.

Q: Did you ever get a job in your own name?

A: No.

(10/13/04 Tr. At 101).

There can be no question that defendant did all he could to avoid apprehension, including the use of aliases and false identification documents. Indeed, the United States introduced evidence a Florida driver's license the defendant used bearing the defendant's photograph with the name of Devon Lewis. Defendant's conduct caused a severe disruption of government functions as it required an enormous expenditure of time and resources by the U.S. Marshals, required the government to

prepare for two trials and forced the witnesses to relive the terror they experienced yet another time.

The Court of Appeals has noted that a long absence can provide support for a §5K2.7 departure:

> The length of the absence can be relevant to determining the extent to which the defendant's conduct disrupted the judicial process. The longer the absence, the more likely it is that the government will have difficulty prosecuting the defendant on his return. In addition, by absenting himself, the defendant (if convicted) delays the day on which he will ultimately face punishment.

United States v. Moreno, 367 F.3d 1, 4 (1st Cir. 2004).

The Court of Appeals in this case found the disruption of government function departure to be proper. Wallace, 461 F.3d at 22-23. The Court noted the burdens defendant's flight caused both on the court and the government in having to prepare and conduct yet another trial. Id. The upward departure for disruption of government functions is warranted.

c. Under-Represented Criminal History Category

In the Pre-Sentence Report, defendant was assigned no criminal history points because he had no prior criminal convictions. However, the PSR did report that the defendant was indicted in Massachusetts for the murder of another of his brothers in March 2000. (PSR ¶ 42.) Defendant thus committed the instant offense while he was under indictment for murder.

Guideline section 4A1.3(a) provides that "[i]f reliable information indicated that the defendant's criminal history

category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted."

While a departure under this section is typically based on crimes for which the defendant has already been convicted, such need not be the case. Indeed, USSG § 4A1.3(2)(D) explicitly provides that the type of information that may form the basis for an upward departure under this section includes "[w]hether the defendant was pending trial or sentencing on another charge at the time of the instance offense." The commentary to this section of the Guidelines further explains that an upward departure may be warranted by the "[c]ommission of the instant offense while on bail or pretrial release for another serious offense." See USSG § 4A1.3, cmt., n.2(A)(iv).

It is unquestionably true that defendant is presumed to be innocent of the murder charge. An upward departure is warranted not because defendant committed another serious crime, but because he committed the instant crime while under indictment for another. As the Court of Appeals noted in this case: "In both scenarios, no adjudication of guilt has occurred, but the defendant's commission of a crime during a period in which one would expect a careful abidance to the law arguably demonstrates his or her propensity for criminal behavior, at least for the purposes of sentencing." Wallace, 461 F.3d at 42.

That defendant committed the instant violent and brazen offense after he had already been indicted for a horribly violent crime unmistakably demonstrates his propensity for violence. That being said, the United States is recommending that only two points are added to defendant's criminal history score, resulting in a Criminal History Category of II. As the Court of Appeals rightly pointed out, only two points are added when a defendant commits an offense while serving another sentence of probation, supervised release or parole. USSG § 4A1.1(d). Based on this analogous provision, the United States recommends that defendant's Criminal History Category be increased to Category II.

d. Extreme Psychological Injury

Both victims at trial testified extensively about how terrified they were during the robbery and how they each believed they were going to be killed. In departing upwardly based on extreme psychological injury, this Court cited extensively to the testimony of the witnesses concerning the trauma they endured during the robbery.

Despite this testimony, the Court of Appeals noted that there was no evidence in the record that the victims suffered longstanding psychological consequences. Wallace, 461 F.3d at 40. The Court of Appeals noted that section 5K2.3 provides that "[n]ormally, psychological injury would be sufficiently severe to

warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns."

It is the understanding of the United States that both victims have suffered long-term trauma and psychological harm as a result of defendant's conduct. The United States has been in contact with the victims, who have indicated that they may wish to make a statement at sentencing[1] and/or submit a witness statement to the Court. Once the United States has had an opportunity to observe and review any statements the victims may

[1] The victims have a statutory right to address the Court at sentencing. See 18 U.S.C. § 3771(a)(4). While one or both of the victims may wish to make a statement to the Court, the United States does not intend to call either of the victims as witnesses in a sentencing hearing.

offer, it will determine whether to seek an upward departure based on extreme psychological injury.

Respectfully submitted,
UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/Lee H. Vilker
LEE H. VILKER
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of February, 2007, I caused a copy of the within Memorandum of Law was sent via electronic filing, to the following:

Edward C. Roy, Jr., Esq.
Assistant Federal Public Defender
Assistant Federal Public Defender
10 Weybosset Street
Suite 300
Providence, R.I. 02903

/s/Lee Vilker
Lee H. Vilker
Assistant United States Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov